**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER CARTER, | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| WRIGHT TRAFFIC CONTROL, LLC, | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Jennifer Carter (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Wright Traffic Control, LLC (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").  In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Philadelphia, PA.

3. Upon information and belief, Wright Traffic Control, LLC is a traffic control company with a location at 2550 Boulevard of Generals, Norristown, PA 19403 and corporate headquarters located at 134 Glendale Road, Beaver Falls, PA 15010.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and

employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

2

1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about July 9, 2024, alleging race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2024-07548 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated April 23, 2026. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one (1) year after filing but within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

3

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African American female.

21. In or around October 2023, Defendant hired Plaintiff as a Flagger.

22. Plaintiff was well qualified for her position and performed well.

### DEFENDANT PAID PLAINTIFF LESS THAN HER CAUCASIAN COWORKERS

23. From the start of her employment, Plaintiff noticed a pattern of disparate pay on the basis of race at Defendant.

24. Defendant paid Plaintiff $18 per hour as a Flagger since her hire in October 2023.

25. However, Cassandra Last Name Unknown ("LNU") (Caucasian), Flagger, was paid $18.50 per hour.

26. Additionally, Kimberly LNU (Caucasian), Flagger, was paid $19.25 per hour, despite having similar levels of experience to Plaintiff.

### PLAINTIFF COMPLAINED TO HUMAN RESOURCES REGARDING THE DISPARATE PAY BASED ON RACE

27. In or around March 2024, Plaintiff complained to Human Resources about race discrimination regarding her pay.

28. Plaintiff wrote her complaint on two (2) of her paystubs and gave them back to Human Resources.

29. Plaintiff called Jill LNU, Human Resources Manager, and complained of the wage differences.

30. Jill said she would look into the issue, but never got back to Plaintiff after this.

## DEFENDANT ISSUED PLAINTIFF A DEFECTIVE CAR, BUT ISSUED CAUCASIAN COWORKERS WELL-FUNCTIONING VEHICLES

31. Further, all of Plaintiff's Caucasian counterparts received well-functioning company cars without issue.

32. However, in or around December 2023, Plaintiff received a company car that had recently been involved in an accident.

33. The driver door did not open and Plaintiff could not lock the car doors properly.

34. As a result, Plaintiff's car was broken into at least once.

35. The radio and several of Plaintiff's personal belongings were stolen from the car.

36. Moreover, the tires on the car Defendant gave to Plaintiff were damaged.

37. Plaintiff had to take the car to be serviced to fix the tires.

## PLAINTIFF COMPLAINED ABOUT THE ISSUES WITH HER COMPANY CAR

38. The next day, Plaintiff complained to Angela LNU (Caucasian), Dispatcher, and Thomas LNU (Caucasian), Operational Manager, about her company car issues.

39. Angela took a verbal record from Plaintiff regarding her concerns.

## DEFENDANT REFUSED TO ADDRESS PLAINTIFF'S COMPLAINTS AND DID NOT REPAIR HER COMPANY CAR

40. Thereafter, Angela and Thomas refused to address Plaintiff's complaints regarding Defendant's disparate treatment.

41. Although Defendant had assured Plaintiff it would provide her with a car in better condition, it never did so.

42. The multiple issues and damage to Plaintiff's company car were not repaired and Defendant only ever addressed minor repair issues on the car issued to Plaintiff.

## DEFENDANT BLAMED PLAINTIFF FOR ISSUES AT JOB SITES CAUSED BY THIRD-PARTY EMPLOYEES

43. In or around March 2024, Plaintiff was assigned to several job sites with third-party utilities workers from Henkels & McCoy, Inc., Engineering and Construction company.

44. These third-party workers were frequently rude at the job sites, halted operations at the job sites and caused the job sites to not run smoothly.

45. Despite Plaintiff's best efforts to complete her job duties in light of these difficulties, Jerome LNU, Field Supervisor at Defendant, and Shawn LNU, Field Supervisor at Defendant, continuously blamed Plaintiff for the poor functioning of the job sites.

## JEROME AND THOMAS TREATED PLAINTIFF'S CAUCASIAN COUNTERPARTS MORE FAVORABLY THAN PLAINTIFF

46. Plaintiff's Caucasian counterparts were assigned to more favorable job sites that did not have these issues.

47. In addition, Jerome and Thomas misgendered Plaintiff on multiple occasions at public job sites in an attempt to humiliate her at work.

48. Jerome and Thomas did not do this to Caucasian female employees.

## ANGELA BEGAN TO CUT PLAINTIFF'S HOURS

49. In or around March 2024, Angela began to cut Plaintiff's hours without reason or warning.

50. Angela began to eliminate job sites off of Plaintiff's calendar.

## PLAINTIFF COMPLAINED ABOUT THE REDUCTION IN HER HOURS

51. Plaintiff complained to Angela about this.

52. However, Angela simply blamed the change on the fact that the job sites did not have enough hours for everyone.

6

53. However, Plaintiff's Caucasian counterparts did not have their hours reduced.

## THOMAS ISSUED PLAINTIFF AN UNWARRANTED WRITTEN WARNING AND TOOK AWAY HER COMPANY CAR

54. In or around early April 2024, Thomas issued Plaintiff an unwarranted written warning for not having all of her equipment set up by the start of her shift.

55. Despite the minor error, Thomas punished Plaintiff by taking away her company car.

56. Plaintiff's Caucasian counterparts were not disciplined in this manner for far more serious infractions.

57. Initially, Thomas told Plaintiff her car was being sent to be repaired.

58. Later, Thomas told Plaintiff she would not be getting her car back.

## DEFENDANT EFFECTIVELY TERMINATED PLAINTIFF

59. Thereafter, Angela completely removed Plaintiff from Defendant's schedule, without warning or explanation effectively terminating Plaintiff.

60. Plaintiff's last day of work with Defendant was on or about April 11, 2024.

61. Defendant discriminated against Plaintiff on the basis of race, disparately paid Plaintiff and retaliated against her for engaging in protected activity in violation of Title VII and the PHRA.

62. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

63. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

64. Plaintiff is a member of protected classes in that she is African American.

65. Plaintiff was qualified to perform the job for which he was hired.

66. Plaintiff suffered adverse job actions, including, but not limited to termination.

67. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

68. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

69. Defendant discriminated against Plaintiff on the basis of race.

70. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

71. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – RACE DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

72. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

73. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).

74. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

75. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

76. Plaintiff engaged in activity protected by Title VII.

77. Plaintiff complained about race discrimination to Defendant.

78. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

79. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

80. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

81. Plaintiff engaged in activity protected by the PHRA.

82. Plaintiff complained about race and associational disability discrimination to Defendant and requested a reasonable accommodation due to her daughter's disability.

83. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

84. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

9

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jennifer Carter, requests that the Court grant her the following relief against Defendant:

(a)   Damages for past and future wage loss;

(b)   Punitive damages;

(c)   Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional pain and suffering;

(d)   Reasonable attorneys' fees;

(e)   Recoverable costs;

(f)   Pre and post judgment interest;

(g)   An allowance to compensate for negative tax consequences;

(h)   Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i)   Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: July 22, 2026                    By:    */s/David M. Koller*
                                              David M. Koller, Esquire
                                              Jordan D. Santo, Esquire
                                              2043 Locust Street, Suite 1B
                                              Philadelphia, PA 19103
                                              215-545-8917
                                              davidk@kollerlawfirm.com
                                              jordans@kollerlawfirm.com

                                              *Counsel for Plaintiff*

11